IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KATHI A. RIEGLER, individually and as Personal Representative on behalf of the heirs of JOHN C. RIEGLER, deceased,<br><br>    Plaintiffs,<br><br>v.<br><br>CARLISLE COMPANIES, INCORPORATED; CARLISLE INDUSTRIAL BRAKE & FRICTION, INC., f/k/a MOTION CONTROL INDUSTRIES, INC.; EATON CORPORATION; FORD MOTOR COMPANY; NAVISTAR, INC., individually and as successor-in-interest to INTERNATIONAL HARVESTER CORPORATION,<br><br>    Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART FORD'S, EATON'S, AND NAVISTAR'S MOTIONS TO EXCLUDE AND GRANTING FORD'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:20-cv-00752-RJS-CMR<br><br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

For five months, Decedent John C. Riegler worked at a service station and performed brake services as part of his duties. Decades later he was diagnosed with mesothelioma and brought this action against Defendants Carlisle Companies, Carlisle Industrial Brake & Friction, Eaton Corporation, Ford Motor Company, and Navistar. Plaintiff alleged Defendants' automotive-friction products exposed him to asbestos and caused his mesothelioma. Now before the court are three motions to exclude expert testimony and one motion for summary judgment.[1]

---

[1] Dkt. 83, 84, 88, 90. Defendant Carlisle Industrial Brake & Friction moved for summary judgment (dkt. 89) but withdrew its motion after oral argument (dkt. 175).

The court heard oral argument on March 7, 2023, and now resolves the motions.[2]

## BACKGROUND & PROCEDURAL HISTORY

### Riegler's Brake Work

Riegler worked at a service station in Salt Lake City, Utah from September 1965 to January 1966.[3] Riegler was a gas station attendant, but he also helped the mechanics with brake work.[4] During the five months he worked at the service station, he estimated he did two brake inspections and two brake jobs each week.[5] A brake job entailed removing and replacing brake shoes.[6]

When Riegler did a brake inspection, he would put the vehicle on a lift so that the brake drum was at eye level.[7] Then he would remove the "brake drum by tapping it with a hammer around the perimeter to break the drum loose."[8] The tapping caused "a lot of stuff," like dust, to get in the air and fall at his feet.[9] After inspecting the brake assembly, Riegler would "blow off

---

[2] Plaintiff has also filed a motion to exclude expert testimony. *See Plaintiff's Daubert Motion to Preclude Defendants' Experts from Referencing and/or Testifying on Certain Matters That Are Based on Inherently Unreliable Studies and Irrelevant Materials* (dkt. 85). This Motion was not argued at the March 7, 2023 hearing, so the court defers ruling on it. *See Mahon v. Am. Airlines, Inc.*, 71 F. App'x 32, 34 (10th Cir. 2003) (unpublished) ("Whether the district court chooses to rule on one pending motion prior to ruling on another pending motion is largely within the court's discretion and the exercise of that discretion rests in large part on the ability of the court to manage its own docket.").

[3] *Amended Complaint* (dkt. 78) ¶ 19; *Exhibits A & B to Plaintiffs' Memorandum in Opposition to Defendant Ford Motor Company's Motion for Summary Judgment, or Alternatively, Motion for Partial Summary Judgment* (dkt. 116-1 at 1–198) [*Riegler Depo.*] at 14:13–16.

[4] *Riegler Depo.* at 15:15–21.

[5] *Id.* at 22:4–6, 26:19–21.

[6] *See id.* at 22:19–23.

[7] *Id.* at 17:20–18:6.

[8] *Id.* at 17:20–18:3.

[9] *Id.* at 18:4–19:8.

the drum" with an air hose and sweep up the dust.[10]  This caused dust to fly in the air Riegler breathed.[11]

Riegler followed a similar process when he replaced brakes.[12]  After removing the brake drum, he would remove the brake pads, air hose out the brake assembly and drum, and reinstall the brakes.[13]  As with brake inspections, removing and replacing brakes caused dust to get in the air Riegler breathed.[14]  Also, when he opened a box of new brakes, he would breathe in dust from the box.[15]

While working, Riegler was near two mechanics who were also working on brakes.[16]  He estimated each mechanic did four to five brake inspections and four to five brake replacements each week.[17]  The mechanics used the same methods to inspect and replace brakes as Riegler.[18]

Riegler did brake work on vehicles manufactured by Ford, Chrysler, General Motors, and International Harvester.[19]  He estimated he did brake jobs on ten to twenty International Harvester vehicles, but he could not give an estimate for the other manufacturers.[20]  He testified he worked "on a lot of" Fords.[21]  Riegler also inspected, removed, and replaced brake shoes

---

[10] *Id.* at 18:11–15, 21:4–21.

[11] *Id.* at 19:9–14, 21:4–21.

[12] *Id.* at 23:2–25:19.

[13] *Id.* at 23:5–21.

[14] *Id.* at 24:9–26:14.

[15] *Id.* at 25:10–19.

[16] *Id.* at 17:17–19.

[17] *Id.* at 22:7–18, 27:10–14.

[18] *Id.* at 19:24–20:11, 27:4–8.

[19] *Id.* at 17:2–7.  Navistar is the successor-in-interest to International Harvester Corporation.

[20] *Id.* at 193:7–18, 270:2–17.

[21] *Id.* at 193:20–21.

manufactured by Eaton and Bendix.[22]  The parties dispute whether Riegler replaced brakes manufactured by Ford.[23]

**The Complaint**

In 2019, Riegler was diagnosed with mesothelioma.[24]  On October 30, 2020, he and his spouse, Kathi A. Riegler, sued the Defendants, alleging their products exposed him to asbestos and caused his mesothelioma.[25]  They asserted six causes of action: negligence, breach of implied warranty, gross negligence, false representation, inadequate warning, and strict liability.[26]  They also requested punitive damages and damages for loss of consortium.[27]

Riegler died from mesothelioma in March 2022.[28]  Kathi Riegler now prosecutes the case as Plaintiff on behalf of Riegler's heirs.[29]

**William M. Ewing, CIH**

Plaintiff designated William M. Ewing, CIH as an expert.  Ewing is an industrial hygienist.[30]  "Industrial hygiene is the field of identification, evaluation, and control of occupational and environmental health hazards."[31]  In his expert report, Ewing cited published

---

[22] *Id.* at 32:20–39:6.

[23] *See Ford Motor Company's Motion for Summary Judgment* (dkt. 83) ¶ 8; *Plaintiffs' Memorandum in Opposition to Defendant Ford Motor Company's Motion for Summary Judgment, or Alternatively, Motion for Partial Summary Judgment* (dkt. 116) ¶ 1(i)(f); *see also Riegler Depo.* at 41:02–42:12, 195:18–24.

[24] Dkt. 78 ¶ 2.

[25] *Complaint* (dkt. 2) at 5–20.

[26] *Id.*

[27] *Id.* at 20–21.

[28] Dkt. 78 ¶ 2.

[29] *Id.* at 2.  The Amended Complaint also added Riegler's daughters, Cheryl Giles and April Riegler, as plaintiffs "Individually and as the statutory Surviving Heirs of Decedent John C. Riegler."  *Id.*  But the parties later stipulated to dismiss Cheryl Giles and April Riegler because of concerns about preserving diversity of citizenship.  *See Stipulated Motion to Dismiss Dispensable Wrongful Death Heirs* (dkt. 172); *Order Granting Stipulated Motion to Dismiss Dispensable Wrongful Death Heirs* (dkt. 173).

[30] *Exhibit H to Ford Motor Company's Motion for Summary Judgment* (dkt. 83-8 at 1–16) [*Ewing Report*] at 2.

[31] *Id.*

4

studies calculating the range of asbestos a person is exposed to when performing different brake tasks, such as blowing dust out of a brake drum, sweeping up brake dust, and unpacking brake shoes.[32]  From his review of these studies and Riegler's deposition testimony, Ewing reached the following conclusions:

- "It is likely Mr. Riegler's exposure when conducting brake jobs involving compressed air resulted in peak (short-term) exposures of 1-30 f/cc.[33]  His exposure when cleaning up after a brake job by sweeping was in the range of <0.1–1.0 f/cc during the activity."[34]

- "It is likely Mr. Riegler's exposure as a bystander to others performing brake jobs with compressed air was in the range of 0.1–5.0 f/cc."[35]

- The "best estimate for Mr. Riegler's exposure when handling asbestos containing brake shoes" is an "average airborne 30-minute asbestos concentration of 0.086–0.368 f/cc when unpacking and repacking brake pads; and 0.021–0.126 when unpacking and repacking brake shoes."[36]

When deposed, Ewing confirmed that his review was limited to assessing "what [Riegler's] exposures are to asbestos, not necessarily which brands."[37]  In other words, he did not "try and break out how much exposure [Riegler] had from working on a Ford vehicle versus a GM product or a Chrysler."[38]

---

[32] *Id.* at 5–12.

[33] f/cc is the abbreviation of fibers per cubic centimeter of air.  *Id.* at 5.

[34] *Id.* at 10.

[35] *Id.* at 11.

[36] *Id.* at 12.

[37] *Exhibit 4 to Eaton Corporation's Motion to Exclude Plaintiffs' Expert Brent C. Staggs, M.D. and William Ewing's Unreliable Causation Opinions and Memorandum in Support* (dkt. 88-4 at 1–27) [*Ewing Depo.*] at 7:14–18.

[38] *Id.* at 31:1–11; *see also id.* at 32:9–15 (confirming he was "not going to provide any opinion testimony as to whether or not Mr. Riegler's exposure to original Ford Motor Company products was a substantial factor in causing his disease"); *id.* at 35:3–18 (confirming he did not attempt "to calculate a dose for Mr. Riegler related to his work with any asbestos-containing friction products"); *id.* at 51:23–54:8 (confirming he had not done "any calculations" related to Riegler's work specifically on International Harvester trucks); *id.* at 58:19–59:3 (confirming that he was not "planning on providing any case-specific testimony with respect to Honeywell and/or Bendix products" because "it's really not about the brand of brake shoes").

**Dr. Brent C. Staggs**

Plaintiff designated Dr. Brent C. Staggs as an expert to offer a causation opinion.  Dr. Staggs is a physician and board-certified pathologist.[39]  He prepared an expert report detailing his views on the cause of Riegler's mesothelioma.[40]  Dr. Staggs testified he prepared his own report and then later reviewed Ewing's report.[41]  Dr. Staggs attached to his report a sworn affidavit,[42] which was not prepared for this case but describes his "basic opinions on asbestos-related disease."[43]

In his affidavit, Dr. Staggs outlined "Principles of Asbestos Related Diseases."[44]  He explained that the term "asbestos" describes "two families of naturally-occurring fibrous minerals, serpentine (chrysotile) and amphibole (actinolite, amosite, anthophyllite, crocidolite and tremolite)."[45]  He further explained, "The ability of all types of asbestos . . . to cause cancers and non-malignant disease is overwhelmingly accepted and agreed to by the medical and scientific community."[46]  Dr. Staggs included a list of twenty-four publications to support this statement.[47]  He also stated that the "relationship between mesothelioma and exposure to

---

[39] *Exhibit 1 to Plaintiff's Daubert Motion to Preclude Defendants' Experts from Referencing and/or Testifying on Certain Matters That Are Based on Inherently Unreliable Studies and Irrelevant Materials* (dkt. 85-1 at 1–26) [*Staggs Report*] at 2.

[40] *See Staggs Report.*

[41] *Staggs Depo.* at 5:19–24.

[42] *Exhibit 1 to Plaintiff's Daubert Motion to Preclude Defendants' Experts from Referencing and/or Testifying on Certain Matters That Are Based on Inherently Unreliable Studies and Irrelevant Materials* (dkt. 85-1 at 27–35) [*Staggs Affidavit*].

[43] *Exhibit G to Ford Motor Company and Honeywell Internal Inc.'s Memorandum in Opposition to Plaintiff's Daubert Motion to Preclude Defendants' Experts From Referencing and/or Testifying on Certain Matters That Are Inherently Unreliable Studies and Irrelevant Material* (dkt. 105-7 at 1–136) [*Staggs Depo.*] at 9:21–10:26.

[44] *Staggs Affidavit* at 28–35.

[45] *Id.* at 28.

[46] *Id.* at 29.

[47] *Id.* at 29–31.

asbestos is so well established in the scientific community, that mesothelioma is considered a 'signal tumor' for asbestos exposure."[48]

Dr. Staggs stated it is his "opinion that mesothelioma and lung cancer are dose-response diseases that are caused by the cumulative exposures to asbestos that a person receives during their lifetime."[49]  He defined "dose" as "the amount of asbestos inhaled over a given time period"[50] and stated that "all doses (small and large) of asbestos contribute to the cumulative dose."[51]  He defined "dose-response" to "mean that the more asbestos exposures someone has, the more likely it is that they will have a response (cancer) to the dose."[52]  Dr. Staggs concluded his affidavit by stating he "evaluate[s] the relative significance of asbestos exposures on a case by case basis."[53]

In his expert report, Dr. Staggs stated he was asked to give his opinion on whether Riegler's "disease was caused by exposure to asbestos."[54]  He then explained Riegler's medical history and mesothelioma diagnosis.[55]  He also explained the radiology reports, pathology reports, and pathology materials he relied on.[56]  Based on these materials, Dr. Staggs diagnosed Riegler with "primary pleural malignant mesothelioma, epithelioid type."[57]

---

[48] *Id.* at 32.

[49] *Id.* at 34.

[50] *Id.*

[51] *Id.* at 31.

[52] *Id.* at 34.

[53] *Id.* at 35.

[54] *Staggs Report* at 11.

[55] *Id.* at 11–12.

[56] *Id.* at 12–13.

[57] *Id.* at 13.

Dr. Staggs also included a summary of Riegler's "asbestos exposure history."[58]  He first described the service station work Riegler did, as recited above.[59]  He stated Riegler "estimated conducting approximately forty (40) brake jobs on cars and trucks manufactured by Chrysler, Ford, GM, and International.  Each brake job would require removing and installing brake shoes on two or four of the vehicle's tires."[60]  The report then stated Riegler "recalled removing and replacing brakes from Bendix, Eaton, and original equipment manufacturer (OEM) brake shoes."[61]  Dr. Staggs explained he reviewed Riegler's deposition testimony and Riegler "was able to remember many of the specific brand names of products that were used and the relative frequency."[62]

Dr. Staggs explained that he does "not state that any contributor to the cumulative dose, no matter how small, is a significant factor to the development of mesothelioma."[63]  Rather, he "review[s], evaluate[s], and consider[s] the information available to [him] about an individual's identified exposures to asbestos, and only after that review will [he] consider causation and attribution of the asbestos exposures."[64]  Dr. Staggs ended with his opinion: "Mr. Riegler had significant exposures to asbestos from his frequent and proximate work with and around asbestos containing products, over his working lifetime.  It is my opinion to a reasonable degree of medical certainty that Mr. Riegler has a malignant mesothelioma that was caused by these

---

[58] *Id.* at 13–14.

[59] *See id.*

[60] *Id.* at 13.

[61] *Id.* at 13–14.

[62] *Id.* at 14.

[63] *Id.* at 15.

[64] *Id.*

identified and substantial exposures to asbestos."[65]  In his report, Dr. Staggs did not assess how much asbestos Riegler was exposed to from products manufactured by each individual Defendant.[66]

During his deposition, Dr. Staggs explained his method.[67]  He uses the Helsinki Consensus, which "indicates in a patient with mesothelioma, a history of even brief or low-dose prior asbestos exposure should be ascribed on the whole as the cause of that patient's mesothelioma."[68]  Relying on the Helsinki Consensus, Dr. Staggs concluded Riegler's mesothelioma was caused by "five months of daily exposure to asbestos-containing brake dust."[69]  Dr. Staggs also uses an article by Drs. Freeman and Kohles and the Bradford Hill criteria to "assess[] causation and break[] it down into its components."[70]  If he is "trying to compare different exposures inside the context of one overall exposure for one patient," he assesses "the proximity and frequency [and] regularity of the exposures."[71]

After Dr. Staggs explained this method, Ford's counsel asked if he did "a qualitative comparison of the exposures from the different [D]efendants' products in this case."[72]  Dr. Staggs responded,

---

[65] *Id.*

[66] *See id.* at 11–15.

[67] *See Staggs Depo.* at 39–41.

[68] *Id.* at 39:22–40:5; *see also Exhibit 1 to Plaintiff's Consolidated Opposition to Defendants' Motions to Preclude the Causation Opinions of Plaintiff's Experts Brent Stagg, MD and William Ewing, CIH* (dkt. 106-1 at 205–11) (Antti Tossavainen, *Asbestos, Asbestosis, and Cancer: The Helsinki Criteria for Diagnosis and Attribution*, 23 Scandinavian J. Work Env't Health 311 (1997)).

[69] *Staggs Depo.* at 40:6–10.

[70] *Id.* at 40:11–22; *see also Exhibit K to Plaintiff's Memorandum in Opposition to Defendant Carlisle Industrial Brake & Friction, Inc. f/k/a Motion Control Industries, Inc.'s Motion for Summary Judgment* (dkt. 121-1 at 613–21) (Michael D. Freeman & Sean S. Kohles, *Assessing Specific Causation of Mesothelioma Following Exposure to Chrysotile Asbestos-Containing Brake Dust*, 18 Int'l J. Occupational and Env't Health 329 (2012)).

[71] *Staggs Depo.* at 40:23–41:1.

[72] *Id.* at 41:13–15.

Sure, based on Mr. Riegler's description.  Of course, he doesn't have a lot of great detail.  So there's no doubt that his overall exposure to friction products for those five or six months is his only exposure that we can identify, that we have facts to talk about.

Aside from that, he identifies similar use of the brand names, the Eaton and Bendix and then of the, you know, Ford, GM, Chrysler, International Trucks.  He doesn't, you know, give us an idea if one of those is more or less than the other when he's talking about it, you know.

So it's difficult to say what the relative proportions of those might be because I don't get a good sense from his history about exactly what the frequency and regularity of one brand name of automobile manufacturer is compared to the other.[73]

Ford's counsel also asked if Dr. Staggs did a "comparative analysis of the frequency and regularity of his exposure to Ford as compared to his exposure to International, Chrysler, or GM."[74]  Dr. Staggs responded, "Well, sure, but I can only analyze as much as [Riegler] gives me information to analyze."[75]  Ford's counsel continued, "Well, describe for me what the comparative analysis of the frequency and regularity and intensity of the exposure to Ford products is compared to GM."[76]  Dr. Staggs replied,

He describes them similar.  So if you have – he doesn't give us any more detail than that, to my memory.  I'm going to rely on his testimony.  He's still alive, to my understanding, so if he testifies live at trial, I'll rely on what he says there. . . . If he doesn't give me any more detail, then I use them in a similar way at similar amounts, then they have similar relative percentages and they all carry similar significance.[77]

When Ford's counsel asked what the "relative percentages" were, Dr. Staggs stated, "I can't pick up percentages [] when he has not given me a percentage."[78]

---

[73] *Id.* at 41:16–42:8.

[74] *Id.* at 42:9–12.

[75] *Id.* at 42:14–15.

[76] *Id.* at 42:18–21.

[77] *Id.* at 42:23–43:8.

[78] *Id.* at 43:9–14.

At that point, Ford's counsel asked Dr. Staggs if he was "just assuming that they're all about equal because [he does not] have any information about what the regularity, proximity, or intensity actually is."[79]  Dr. Staggs responded that he has "a lot of idea of what the overall proximity, frequency, and regularity is."[80]  He then described how many brake inspections and brake replacements Riegler and the mechanics did.[81]  He finished his answer by stating,

> [Riegler] just doesn't give us any more detail on the breakdown between the different brand names.
>
> He describes Bendix and Eaton as being, you know, both frequently used as far as brake linings and then he describes the four different manufacturers of cars that come through and he doesn't, to my memory, give me an idea of whether one was significantly more than the other.
>
> So, right, without him giving me any more detail than that, then I consider them to be all roughly equal because I would assume that he would say if he did all Ford cars and just did one Chrysler to his memory, then he would have said that.  I don't remember him saying that.[82]

Ford's counsel then posed a hypothetical: "If Mr. Riegler testifies at trial that he only did one Ford brake and the rest were GM, Chrysler, and International, would you still ascribe causation to that one Ford brake job?"[83]  Dr. Staggs answered, "Probably not."[84]  In response to more hypothetical scenarios, Dr. Staggs explained, "Well, [if] it's a similar amount to the others,

---

[79] *Id.* at 43:18–21.

[80] *Id.* at 43:24–25.

[81] *Id.* at 44:1–8.

[82] *Id.* at 44:8–22; *see also id.* at 55:8–10 ("[Riegler] doesn't define it any further, so at this point I am assuming that they all have similar frequency and regularity."); *id.* at 55:25–56:3 ("When [Riegler's] details are vague, then I have to make some assumptions and it's really up to the jury to decide if they want to – what set of facts they want to believe."); *id.* at 70:16–18 ("I'm assuming the frequency and regularity is roughly equal of the Eaton and the Bendix and then of the four car manufacturers."); *id.* at 70:21–22 ("If it changes from that, that they're not roughly equal parts, then my opinions may change . . . ."); *id.* at 88:25–89:7 ("Now, in this particular case we're having to assume, when we come to brand names at least, that it is a similar portion[]. . . . And if the facts change or I'm asked a different hypothetical, then that might change the way I view things, it might change my opinion."); *id.* at 93:25–94:10 (agreeing that he doesn't remember Riegler "distinguish[ing] between the auto manufacturers suggesting that one was more or one was less than the others"); *id.* at 100:25–101:3 (stating he was "not provided with any estimate of Mr. Riegler's dose of asbestos from working with Bendix brakes").

[83] *Id.* at 44:23–45:1.

[84] *Id.* at 45:3.

11

then, yes, it has similar significance, it is significant.  If it's not a similar amount, it's far and away fewer, then that's where I start to consider things could be trivial."[85]  When Ford's counsel asked him to explain when an exposure becomes trivial, Dr. Staggs responded, "Well, I've already described it to you as best I can in a case like this.  When it has similar significance, it carries significance and it becomes significant."[86]

After this response, Ford's counsel started questioning Dr. Staggs about the objective criteria he uses to decide significance.[87]  Dr. Staggs referenced the Freeman and Kohles article and explained that he looks at the facts of each case in context.[88]  He further stated there is no "mathematical formula" and he relies on his "training and experience and the medical literature."[89]  In response to further questioning, Dr. Staggs explained that he considers all exposures as part of the "cumulative exposure."[90]  He then uses "proximity and frequency and regularity" to determine "which parts of the cause are significant or trivial."[91]

**Motions to Exclude**

Ford, Eaton, and Navistar move individually to exclude certain expert testimony.  Ford moves "to exclude all expert opinion that Mr. Riegler's alleged exposure to asbestos from Ford's automotive friction products was a substantial factor in causing his mesothelioma."[92]  Ford's

---

[85] *Id.* at 47:3–7.

[86] *Id.* at 47:12–15.

[87] *Id.* at 50:16–19.

[88] *Id.* at 51:5–52:10.

[89] *Id.* at 52:20–53:16; *see also id.* at 66:19–68:20.

[90] *Id.* at 61:1–2.

[91] *Id.* at 61:1–8.

[92] *Ford Motor Company's Motion to Exclude Plaintiffs' Expert's Unreliable Causation Opinion and Memorandum in Support* (dkt. 84) at 8.

motion is limited to Dr. Staggs's opinion and does not seek to exclude Ewing's opinion.[93]  Eaton and Navistar, however, move to exclude Dr. Staggs's and Ewing's opinions.[94]  Navistar did not include its own legal analysis but rather "incorporate[d] the facts and arguments" from Ford's and Eaton's motions.[95]  Riegler filed a consolidated opposition to these three motions.[96]  Ford and Eaton both filed replies.[97]  Riegler later filed a notice of supplemental authority,[98] which Ford responded to.[99]

**Ford's Motion for Summary Judgment**

Ford moves for summary judgment.[100]  It argues it is entitled to summary judgment because Plaintiff "cannot establish that [Riegler] was exposed to a harmful level of Ford's friction products."[101]  In the alternative, it seeks partial summary judgment on Riegler's claim for punitive damages.[102]  Plaintiff opposed the motion,[103] and Ford filed a reply.[104]

---

[93] *See id.* at 8–14.

[94] *Eaton Corporation's Motion to Exclude Plaintiffs' Experts Brent C. Staggs, M.D. and William Ewing's Unreliable Causation Opinions and Memorandum in Support* (dkt. 88) at 21–22; *Defendant Navistar, Inc.'s Motion to Exclude Plaintiffs' Experts Staggs' and Ewing's Unreliable Causation Opinions* (dkt. 90) at 1.

[95] Dkt. 90 at 2.

[96] *Plaintiff's Consolidated Opposition to Defendants' Motions to Preclude the Causation Opinions of Plaintiff's Experts Brent Stagg, MD and William Ewing CIH* (dkt. 106).

[97] *Ford Motor Company's Reply Memorandum in Support of Motion to Exclude Plaintiff's Experts' Unreliable Causation Opinion* (dkt. 124); *Eaton Corporation's Reply in Support of Its Motion to Exclude Plaintiffs' Experts Brent C. Staggs, M.D. and William Ewing's Unreliable Causation Opinions* (dkt. 131).

[98] *Notice of Supplemental Authority* (dkt. 163).

[99] *Ford Motor Company's Response to Plaintiff's Notice of Supplemental Authority* (dkt. 164).

[100] Dkt. 83.

[101] *Id.* at 7.

[102] *Id.*

[103] *Plaintiffs' Memorandum in Opposition to Defendant Ford Motor Company's Motion for Summary Judgment, or Alternatively, Motion for Partial Summary Judgment* (dkt. 116).

[104] *Ford Motor Company's Reply Memorandum in Support of Motion for Summary Judgment* (dkt. 126).

## ANALYSIS

The court first considers and rejects Eaton's and Navistar's challenges to Ewing's expert opinion. Next, the court concludes Dr. Staggs's general causation opinion is admissible, but his specific causation opinion is inadmissible. The court then considers Ford's Motion for Summary Judgment and concludes it is entitled to summary judgment on all Plaintiff's claims.

## I.    Motions to Exclude

Ford, Eaton, and Navistar filed motions to exclude expert testimony. The court first outlines the legal standards under Rule 702. It then addresses Ewing's and Dr. Staggs's opinions, in turn.

### A.  Rule 702

"Because this is a diversity case, substantive issues are controlled by state law and procedural issues are controlled by federal law."[105] Accordingly, the Federal Rules of Evidence govern the court's evidentiary rulings.[106]

The motions to exclude challenge expert testimony under Federal Rule of Evidence 702.[107] Rule 702 imposes on district courts "a gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'"[108] Expert opinion is relevant if it "will help the trier of fact to understand the evidence or to determine a fact in issue."[109] Expert opinion is reliable if it "is based on sufficient facts or data," it "is the product

---

[105] *Burnham v. Humphrey Hosp. Reit Tr., Inc.*, 403 F.3d 709, 712 (10th Cir. 2005).

[106] *See Griego v. State Farm Mut. Auto. Ins. Co.*, 839 F. App'x 258, 262 (10th Cir. 2020) (unpublished) ("The Federal Rules of Evidence generally govern the admissibility of evidence in a diversity lawsuit.").

[107] Dkt. 84 at 8; Dkt. 88 at 4; Dkt. 90 at 1.

[108] *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).

[109] Fed. R. Evid. 702(a).

of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case."[110]

"The proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible."[111]  The proponent does not need to "prove that the expert is undisputably correct or that the expert's theory is generally accepted in the scientific community."[112]  Rather, the proponent "must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements."[113]

### B.  Motions to Exclude Ewing's Opinion

Eaton and Navistar move to exclude Ewing's expert opinion.[114]  They contend Ewing's opinion is inadmissible under Federal Rules of Evidence 702 and 403.  The court concludes Ewing's opinion is admissible under both rules.

### 1.  Ewing's Opinion Is Admissible Under Rule 702

Eaton and Navistar argue Ewing's opinion is inadmissible under Rule 702, but they do not challenge his qualifications or methods.  Rather, they argue his opinion is inadmissible because he "did not attempt to establish specific causation."[115]  It is true Ewing did not opine on specific causation, but that does not mean his opinion is inadmissible.

---

[110] *Id.* at R. 702(b)–(d).

[111] *United State v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

[112] *Dodge*, 328 F.3d at 1222 (10th Cir. 2003) (internal quotations and citation omitted).

[113] *Id.*

[114] Dkt. 88 at 17, 21–22; Dkt. 90 at 1–2.  As noted above, Navistar incorporated Eaton's arguments without making its own separate arguments.  *See* Dkt. 90 at 2.  For that reason, the court will cite only Eaton's motion when explaining the arguments.

[115] Dkt. 88 at 17.

Under Rule 702, an expert's opinion must "help the trier of fact to understand the evidence or to determine a fact in issue."[116]  A fact at issue in this case is whether automotive-friction products caused Riegler's mesothelioma.  Ewing's testimony about Riegler's likely asbestos exposure while performing different brake tasks will certainly help the jury determine whether asbestos-containing automotive friction products caused Riegler's mesothelioma.  To be sure, Ewing's testimony cannot prove all elements of Riegler's claims, but it does not have to.  Rule 702 requires only that the opinion is helpful to understanding the evidence or determining "a fact in issue."  Ewing's opinion satisfies that requirement.

Eaton and Navistar also contend Ewing's opinion is inadmissible because he does not "have the data to support the 'cumulative exposure' theory."[117]  But Ewing never purported to apply that theory.  He estimated Riegler's likely asbestos exposure and testified he was not "qualified to answer" questions about "medical causation."[118]  So it is immaterial that Ewing's opinion cannot support a theory he does not use.

For these reasons, the court declines to exclude Ewing's opinion under Rule 702.

## 2.   Ewing's Opinion Is Admissible Under Rule 403

Eaton and Navistar also argue Ewing's opinion is inadmissible under Rule 403.[119]  Rule 403 permits courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

---

[116] Fed. R. Evid. 702(a).

[117] Dkt. 88 at 17.

[118] *Ewing Depo.* at 32:9–15.

[119] Dkt. 88 at 21–22; Dkt. 90 at 1–2.

evidence."[120]  If evidence is otherwise admissible, exclusion under Rule 403 "is an extraordinary remedy and should be used sparingly."[121]

At oral argument, Eaton contended Ewing's testimony is prejudicial because if Dr. Staggs's opinion is excluded, the jury would assume causation and allocate fault based on Ewing's testimony, even though Ewing did not assess which Defendants were responsible for which exposures.[122]  But Ewing was clear in his deposition that he is not going to provide Defendant-specific opinions and "medical causation" opinions.[123]  And Defendants would be able to cross-examine Ewing about the limitations of his opinion.  For that reason, the court is not persuaded that the probative value of Ewing's testimony is "substantially outweighed by a danger of . . . unfair prejudice,"[124] and it declines to exclude his testimony under Rule 403.

### C. Motions to Exclude Dr. Staggs's Causation Opinion

Ford, Eaton, and Navistar move to exclude Dr. Staggs's opinion under Rule 702.[125]  At issue are two of Dr. Staggs's opinions: (1) asbestos-containing automotive friction products can cause mesothelioma (general causation opinion),[126] and (2) each Defendants' products were individually a cause of Riegler's mesothelioma (specific causation opinion).[127]

---

[120] Fed. R. Evid. 403.

[121] *United States v. Durham*, 902 F.3d 1180, 1224 (10th Cir. 2018) (quoting *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018)).

[122] *March 7, 2023 ZOOM Hearing* at 1:17–1:19.

[123] *Ewing Depo.* at 32:9–15.

[124] *See* Fed. R. Evid. 403.

[125] Dkt. 84; Dkt. 88; Dkt. 90.  Eaton and Navistar also argue Dr. Staggs's opinion is inadmissible under Federal Rule of Evidence 403.  Dkt. 88 at 21–22; Dkt. 90 at 1–2.  Because the court concludes his opinion is inadmissible under Rule 702, it does not address this additional ground.

[126] Dkt. 84 at 22–30; Dkt. 106 at 56–59; Dkt. 124 at 20–22; *see also Taylor v. Univ. of Utah*, 2020 UT 21, ¶ 49 n.9, 466 P.3d 124 ("General causation is whether a substance is capable of causing a particular injury or condition in the general population, while specific causation is whether that substance caused the particular individual's injury." (quoting *Nelson v. Enid Med. Assocs., Inc.*, 2016 OK 69, ¶ 30, 376 P.3d 212)).

[127] Dkt. 84 at 16–22; Dkt. 88 at 8–16; Dkt. 106 at 63–65.

The court first considers and rejects Ford's argument that Dr. Staggs's general causation opinion is inadmissible. The court then explains why Dr. Staggs's specific causation opinion is inadmissible.

### 1. Dr. Staggs's General Causation Opinion Is Admissible

Ford challenges Dr. Staggs's opinion that there is a link between asbestos-containing automotive friction products and mesothelioma.[128] Specifically, Ford argues Dr. Staggs's opinion is flawed because chrysotile asbestos, the form of asbestos used in automotive friction products, "is physically and chemically distinct from the other forms of asbestos involved in many of the studies employed by Plaintiffs' experts."[129] Ford then cites studies indicating the chrysotile in brake linings is not harmful.[130]

Staggs, however, cited studies indicating a connection between automotive friction products and mesothelioma.[131] For example, the National Institute for Occupational Safety and Health conducted "industrial hygiene surveys to characterize airborne asbestos exposures and work practices for brake mechanics."[132] This included collecting air samples when mechanics used compressed air to clean brake assemblies.[133] At one facility, two of the four samples

---

[128] Dkt. 84 at 22–30. For purposes of its Motion to Exclude, Eaton admitted that Riegler's mesothelioma was caused by asbestos exposure from automotive friction products. Dkt. 88 at 8; Dkt. 131 at 3. Accordingly, the court's analysis of this argument is limited to Ford's arguments.

[129] Dkt. 84 at 22–25. Ford does not identify the studies it believes are unreliable, so the court does not attempt to assess each study cited by Dr. Staggs and Plaintiff. *See id.*

[130] *Id.* at 23–24.

[131] *See Staggs Report* at 4, 8–9; Dkt. 106 at 50–57.

[132] *Exhibit 7 to Plaintiff's Consolidated Opposition to Defendants' Motions to Preclude the Causation Opinions of Plaintiff's Experts Brent Stagg, MD and William Ewing, CIH* (dkt. 106-7 at 21–64) at 24 (Dennis R. Roberts & Ralph D. Zumwalde, *Industrial Hygiene Summary Report of Asbestos Exposure Assessment for Brake Mechanics*, Report #32.4 (1982)).

[133] *Id.*

collected showed asbestos "fiber levels that exceeded the OSHA ceiling of 10 fibers/cc."[134]  And one review of relevant studies states, "Fiber release studies of actual brake repair and replacement and the laboratory simulation studies both demonstrate the ability of encapsulated asbestos containing brake products[] to release respirable asbestos fibers at concentrations capable of causing asbestos related disease."[135]

Ford, however, contends Dr. Staggs's cited studies are unreliable because they are case studies and not epidemiological studies.[136]  But Rule 702 does not impose such strict guidelines. Rather, a Rule 702 inquiry should be flexible and focused on assessing the relevance and reliability of evidence, not whether the evidence is the most correct.[137]  The court declines to impose a bright line rule about what categories of studies are sufficient under Rule 702.[138] Arguments about the appropriate weight given to studies are best presented to a jury.[139]

---

[134] *Id.* at 24, 41, 50.  *See also id.* at 24 ("The data show excessive asbestos fiber exposures during brake servicing, especially brake assembly cleaning; therefore, vacuum cleaning systems and NIOSH approved respiratory protection are recommended to reduce asbestos exposure levels within NIOSH limits.").

[135] *Exhibit 6 to Plaintiff's Consolidated Opposition to Defendants' Motions to Preclude the Causation Opinions of Plaintiff's Experts Brent Stagg, MD and William Ewing, CIH* (dkt. 106-6 at 127–36) at 131 (Richard A. Lemen, *Asbestos in Brakes: Exposure and Risk of Disease*, 45 Am. J. Indus. Med. 229, 232 (2004)).

[136] Dkt. 84 at 25–30; Dkt. 124 at 20–21.

[137] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594–95 (1993); *see also* Fed. R. Civ. P. 702 advisory committee's note to 2000 amendments ("As the court stated in *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994), proponents 'do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable.'").

[138] *See Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378, 1384 (4th Cir. 1995) ("[E]xpert testimony need not be based upon identical case studies or epidemiological data."); *id.* ("Under the *Daubert* standard, epidemiological studies are not necessarily required to prove causation, as long as the methodology employed by the expert in reaching his or her conclusion is sound."); *Yates v. Ford Motor Co.*, No. 5:12-CV-752-FL, 2015 WL 3463559, at *4 (E.D.N.C. May 30, 2015) (declining "to adopt a general rule excluding case reports or anecdotal evidence as a source of evidence regarding causation").

[139] *Daubert*, 509 U.S. at 596 (stating "presentation of contrary evidence" is one of the "traditional and appropriate means of attacking shaky but admissible evidence").  *See also In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1263 (10th Cir. 2014) ("It is then for the jury to evaluate the reliability of the underlying data, assumptions, and conclusions."); *Dugger v. Union Carbide Corp.*, No. CCB-16-3912, 2019 WL 4750568, at *5 (D. Md. Sept. 30, 2019) ("Honeywell's argument that chrysotile in brake dust form has different properties than chrysotile asbestos generally goes to the weight of Dr. Maddox's conclusion, but not its admissibility.").

The court concludes Dr. Staggs's opinion about the causal relationship between asbestos-containing automotive frictions products and mesothelioma is sufficiently reliable to be admissible.

### 2.   Dr. Staggs's Specific Causation Opinion Is Inadmissible

Ford, Eaton, and Navistar individually challenge Dr. Staggs's opinion that their products caused Riegler's mesothelioma.[140]   The court concludes Dr. Staggs's opinion is inadmissible because it is not "based on sufficient facts or data" and because Dr. Staggs did not "reliably appl[y] the principles and methods to the facts of the case."[141]

### a.   Dr. Staggs's Opinion Is Not Based on Sufficient Facts or Data

Under Rule 702, an expert's opinion must be "based on sufficient facts or data."[142]   For that reason, expert testimony based on unsupported assumptions may be inadmissible.[143] Afterall, if experts were permitted to rely on any assumptions, then the sufficient-facts-or-data requirement would be meaningless.  And "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[144]   In this case, the court concludes there is "too great an analytical gap" between the existing facts and Dr. Staggs's opinion.

---

[140] Dkt. 84 at 16–22, 30–31; Dkt. 88 at 9–21.

[141] *See* Fed. R. Evid. 702(b), (d).

[142] *Id.* at R. 702(b).

[143] *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1524 (10th Cir. 1984) (holding it was not an abuse of discretion to admit expert testimony relying on assumptions which "were not without support"); *see also Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."); *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record.").

[144] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Dr. Staggs testified he determines the significance of an exposure by assessing proximity, frequency, and regularity.[145]  He also testified he assumed the frequency and regularity of Riegler's exposures were equal because Riegler's testimony on this point was vague.[146]  This assumption, however, is neither scientific nor supported by Riegler's sworn testimony.  Riegler testified he replaced brakes on ten to twenty International Harvester trucks[147] and worked on "a lot of Ford vehicles."[148]  But when asked to estimate how many of his brake replacements were "Fords versus Chevys, Chryslers, Dodges, Internationals, or any other manufacturer," Riegler said he could not.[149]  Because Riegler could not estimate the breakdown of his exposures, Dr. Staggs's assumption that they were all equal has no evidentiary support.

Moreover, Dr. Staggs's assumption is contrary to Riegler's testimony about Carlisle. Riegler testified he knew the name Carlisle but could not "apply it to any specific product."[150] He also did not have "any information with or around any product or service associated with the name Carlisle" and was unaware of anyone he could "talk to to refresh [his] recollection of whether [he] worked with or around Carlisle" products.[151]  Plaintiff argues this is immaterial because Carlisle's products were packaged and labeled in a way that would have made it impossible for Riegler to identify them.[152]  But regardless of how Carlisle's products were labeled, the point remains the same: Dr. Staggs assumed Riegler's exposures to Carlisle products

---

[145] *Staggs Depo.* at 61:1–7.

[146] *Id.* at 55:8–10, 55:25–56:3, 70:16–18, 93:25–94:10.

[147] *Riegler Depo.* at 270:2–17.

[148] *Id.* at 193:20–21.

[149] *Id.* at 193:13–21.

[150] *Id.* at 320:20–24.

[151] *Id.* at 321:2–9.

[152] *See* Dkt. 121 at 5, 28.

were equal to his exposures to other Defendant's products, even though Riegler could not identify any exposures to Carlisle's products.  And although Carlisle did not move to exclude Dr. Staggs's opinion, Dr. Staggs's assumptions about Riegler's exposures to Carlisle's products are still relevant because they demonstrate the flaw in Dr. Staggs's method.

Dr. Staggs nevertheless attempted to justify his assumptions by explaining that he assumed Riegler would have said if the exposures were not "roughly equal."[153]  But, as Plaintiff's counsel conceded,[154] Dr. Staggs's assumption about how Riegler explained his exposures is not "scientific, technical, or other specialized knowledge."[155]  It is just Dr. Staggs's non-expert opinion about Riegler's testimony.  This is not the proper role of an expert.  For that reason, it is not sufficient to support Dr. Staggs's opinion.

Finally, the court notes other decisions from this court excluding testimony like Dr. Staggs's that is based on "a lack of facts and data."[156]  In *Smith v. Ford Motor Co.*, for example, a plaintiff with mesothelioma alleged he was "exposed to asbestos-containing Ford brake parts" while working as a service station attendant.[157]  He was uncertain how many times he had been exposed to Ford products but estimated he "may have changed brake pads on Ford vehicles on as many as seven occasions."[158]  Ford moved to exclude expert testimony that all exposures played a contributing role in his mesothelioma.[159]

---

[153] *Staggs Depo.* at 44:17–22.

[154] *March 7, 2023 ZOOM Hearing* at 46:30–47:00.

[155] *See* Fed. R. Evid. 702(a).

[156] *Smith v. Ford Motor Co.*, No. 2:08-cv-630, 2013 WL 214378, at *1 (D. Utah Jan. 18, 2013); *see also Anderson v. Ford Motor Co.*, 950 F. Supp. 2d 1217, 1224 (D. Utah 2013) (excluding expert testimony based on a "lack of information sufficient to show the level of exposure which does not create a risk of mesothelioma").

[157] 2013 WL 214378, at *1.

[158] *Id.*

[159] *Id.* at *1–3.

The court concluded the expert's opinion was inadmissible because, among other reasons, it was based on "a lack of facts and data."[160]  The data was lacking because when the expert was unable to "rule out any asbestos exposure as a possible cause," he assumed all exposures were contributing causes.[161]  So too here.  When Dr. Staggs was unable to determine how frequent or regular the exposures were, he assumed all exposures were equal and thus significant.[162]

In sum, the "analytical gap"[163] between the existing facts and Dr. Staggs's opinion is too great because Dr. Staggs relied on an assumption—made without evidentiary support—that Riegler was exposed to each Defendant's products equally.  For that reason, his opinion is unreliable under Rule 702.[164]

### b.  Dr. Staggs Did Not Reliably Apply the Principles He Identifies

Expert testimony must also be "the product of reliable principles and methods" and the expert must "reliably appl[y] the principles and methods to the facts of the case."[165]  Here, even assuming Dr. Staggs described "reliable principles and methods" underlying his opinion, the court concludes he did not reliably apply those principles and methods.

---

[160] *Id.* at *2.

[161] *Id.* at *2–3.

[162] *Staggs Depo.* at 70:11–71:1.  Plaintiff argues *Smith v. Ford Motor Co.*, 2013 WL 214378, is inapplicable because the expert in that case relied on the every exposure theory, a theory Dr. Staggs testified he does not apply.  Dkt. 106 at 9–10.  But regardless of what theory Dr. Staggs claimed to apply, he still relied on unsupported assumptions about the data, which was the problem in *Smith. See Smith*, 2013 WL 214378, at *2–3.

[163] *Gen. Elec. Co.*, 522 U.S. at 146.

[164] After oral argument, Plaintiff submitted supplemental authority to support her argument that Dr. Staggs's opinion is based on sufficient facts.  Dkt. 176 (citing *Gooding v. Liberty Mut. Ins. Co.*, No. 20-1133 (E.D. La. Feb. 28, 2023); *Crossland v. Huntington Ingalls, Inc.*, No. 20-3470, 2023 WL 2072566 (E.D. La. Feb. 17, 2023); *Michel v. Ford Motor Co.*, No. 18-4738, 2019 WL 118008 (E.D. La. Jan. 7, 2019)).  The court is not persuaded by the reasoning of these courts, for the reasons explained above.

[165] Fed. R. Evid. 702(c), (d).

Dr. Staggs testified that his method is to consider all exposures, no matter how small, as contributing to the cumulative exposure.[166]  He then uses "proximity and frequency and regularity . . . to determine which parts of the cause are significant or trivial."[167]  But from his report and deposition, it is unclear whether or how he applied those principles to the facts of this case.  For example, Riegler stated he did brake replacements on ten to twenty International Harvester trucks, but nowhere does Dr. Staggs take that number, assess the proximity, frequency, and regularity, and then explain why ten to twenty replacements is enough to be significant.  Nor does he do that for products manufactured by any of the other Defendants.

At oral argument, however, Plaintiff's counsel asserted Dr. Staggs reliably applied peer-reviewed scientific literature.[168]  To be sure, Dr. Staggs identified several academic articles and standards he purportedly relied on, including the Helsinki Consensus, the Bradford Hill criteria, and the Freeman and Kohles article.  But Dr. Staggs did not explain those standards, how he applied them to each Defendant in this case, and how he reached his conclusion.  Put differently, he did not show his work.  Rather, he cited academic articles and principles and then stated his conclusion.

In response to these points, Plaintiff's counsel argued Dr. Staggs did not apply the literature to each Defendant because he was not asked to on cross-examination.[169]  But Plaintiff has the burden of showing Dr. Staggs's opinion is admissible.[170]  Moreover, Defendants' counsel asked Dr. Staggs multiple times to explain how he reached his conclusion, and each time Dr.

---

[166] *Staggs Depo.* at 60:12–61:8.

[167] *Id.*

[168] *March 7, 2023 ZOOM Hearing* at 54:45–57:00.

[169] *Id.* at 57:00–59:17, 1:01:15–1:01:54, 1:37:07–1:41:30.

[170] *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Staggs merely referred to articles or principles without explaining how he applied them in this case.[171]

Although Dr. Staggs cited methods that may be reliable, he did not adequately explain his application of those methods here.  Because an expert's ipse dixit is not sufficient under Rule 702, the court concludes Dr. Staggs's opinion is inadmissible for this additional reason.[172]

## II.   Ford's Motion for Summary Judgment

Ford moves for summary judgment on all Plaintiff's claims and, in the alternative, for partial summary judgment.[173]  The court will first outline the relevant legal standards.  It will then explain why Ford is entitled to summary judgment on all Plaintiff's claims.

### A.  Legal Standards

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[174]  "A genuine issue of material fact exists when 'the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'"[175]

---

[171] *See Staggs Depo.* at 50:16–54:8, 66:19–73:15.

[172] Ford also argues Dr. Staggs's opinion would "not help the jury understand causation in terms of Utah law." Dkt. 84 at 31.  The parties agree that Utah law "employ[s] a 'substantial factor' test to determine causation." *See Smith v. Volkswagen SouthTowne, Inc.*, 2022 UT 29, ¶ 47 n.12, 513 P.3d 729; *see also* Dkt. 84 at 14; Dkt. 88 at 8; Dkt. 106 at 15.  But the parties disagree about what the substantial factor test requires Plaintiff to show.  Ford, for example, argues it requires Plaintiff to show but-for causation.  Dkt. 84 at 14–15.  At oral argument, however, Plaintiff's counsel argued all Riegler had to do was "identify the brake."  *March 7, 2023 ZOOM Hearing* at 32:00–33:00.  The Utah Supreme Court's latest toxic-tort decision, *see Smith v. Volkswagen SouthTowne*, 2022 UT 29, does not clearly answer this question, particularly because it was not a case with multiple defendants and exposures.  But regardless of what Utah law would require Plaintiff to show, the court concludes Dr. Staggs's opinion is unreliable under Rule 702 because it is not "based on sufficient facts or data" and because he has not "reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702(b), (d).

[173] Dkt. 83.  Because the court grants summary judgment on all Plaintiff's claims, it need not address Ford's alternative argument for partial summary judgment.

[174] Fed. R. Civ. P. 56(a).

[175] *Zwygart v. Bd. of Cnty. Comm'rs*, 483 F.3d 1086, 1090 (10th Cir. 2007) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)).

Under this framework, summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial."[176]  Accordingly, if a court excludes a plaintiff's expert and that expert's testimony is essential to proving the plaintiff's claims, the defendant is entitled to summary judgment.[177]

### B.  Ford Is Entitled to Summary Judgment

Ford argues it is entitled to summary judgment because Plaintiff has failed to make a sufficient showing of causation,[178] an essential element of each of the claims.[179]  Because the court has excluded Dr. Staggs's specific causation opinion, the question before the court is whether expert testimony is essential to proving causation in this case.  The court concludes it is.

"Utah courts generally require expert testimony to prove causation in all but the most obvious cases."[180]  Expert testimony is not required, however, if assessing causation is "within the common knowledge of the average layperson."[181]

---

[176] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[177] *See Harris v. Remington Arms Co., LLC*, 997 F.3d 1107, 1115 (10th Cir. 2021) (holding that exclusion of a party's expert left that party "without a basis to avoid summary judgment").

[178] Dkt. 83 at 18.

[179] Plaintiff asserted the following claims: negligence, breach of implied warranty, gross negligence, false representation, inadequate warning, and strict liability.  Dkt. 78 at 6–21.  Each of these claims requires Plaintiff to show causation.  *See Gonzalez v. Russell Sorenson Constr.*, 2012 UT App 154, ¶ 20, 279 P.3d 422 (stating plaintiff must establish "proximate cause" to show negligence); *Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152, 159 (Utah 1979) (indicating cause is an element of both strict liability and breach of the implied warranty of merchantability); *Callister v. Snowbird Corp.*, 2014 UT App 243, ¶ 16, 337 P.3d 1044 (explaining gross negligence includes same elements as negligence); *House v. Armour of Am., Inc.*, 929 P.2d 340, 346 (Utah 1996) (stating causation is an element of failure to warn claim).  As Ford noted, "false representation" does not appear to be a cause of action in Utah, but a similar cause of action—fraudulent misrepresentation—requires proof of causation. Dkt. 83 at 19 n.3; *see also Pace v. Parrish*, 247 P.2d 273, 274–75 (Utah 1952) (listing the elements of fraudulent misrepresentation, including that the false representation "induced" the listener to act to their injury).

[180] *Blank v. Garff Enters. Inc.*, 2021 UT App 6, ¶ 30, 482 P.3d 258 (quoting *Ladd v. Bowers Trucking, Inc.*, 2011 UT App 355, ¶ 10, 264 P.3d 752).

[181] *Id.* ¶ 32.

26

This is not an obvious case.  For one, Riegler was not diagnosed until decades after he was allegedly exposed to the Defendants' products.  This temporal gap means there is not an obvious cause-and-effect relationship.  Moreover, there are multiple Defendants in this case, so the jury would need to assess how much Riegler was exposed to each Defendant's products, if at all, and determine whether the exposures from each Defendant were significant contributors to his illness.  This analysis is not "within the common knowledge of the average layperson."[182]

Thus, Plaintiff needed expert opinion on causation to defeat Ford's Motion for Summary Judgment.  But the court has excluded Dr. Staggs's specific causation opinion.  And other than Dr. Staggs, the only expert Plaintiff argues can establish specific causation is Ewing.[183]  But he did not offer an opinion on whether an individual Defendant—such as Ford—manufactured products that were a substantial factor in Riegler's development of mesothelioma.  Rather, his opinion was limited to assessing Riegler's asbestos exposure from specific tasks, and "not necessarily which brands" he was exposed to.[184]  So Ewing's opinion cannot establish specific causation.

Because Plaintiff does not have expert testimony to establish a causal connection between Ford's products and Riegler's mesothelioma, Ford is entitled to summary judgment on all Plaintiff's claims.

---

[182] *See id.*

[183] *See* Dkt. 116 at 38–39 ("[B]ased upon the expert opinions of Mr. Ewing and Dr. Staggs, his exposures to asbestos from Ford's brakes was a substantial factor in his development of mesothelioma.").

[184] *Ewing Depo.* at 7:14–18.

**CONCLUSION**

For the reasons articulated, Ford's Motion for Summary Judgment[185] is GRANTED.  The

following motions are GRANTED IN PART and DENIED IN PART:

- Ford Motor Company's Motion to Exclude Plaintiffs' Expert's Unreliable Causation Opinion and Memorandum in Support[186]

- Eaton Corporation's Motion to Exclude Plaintiffs' Experts Brent C. Staggs, M.D. and William Ewing's Unreliable Causation Opinions and Memorandum in Support[187]

- Defendant Navistar, Inc.'s Motion to Exclude Plaintiffs' Experts Staggs' and Ewing's Unreliable Causation Opinions[188]

SO ORDERED this 23rd day of March 2023.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[185] Dkt. 83.

[186] Dkt. 84.

[187] Dkt. 88.

[188] Dkt. 90.